Nos. 26-1037, 26-1039, 26-1054

# In the
# United States Court of Appeals
# For the
# Eighth Circuit

---

Joyce Johnson,
Plaintiff-Appellant,

vs.

Landlord Resource Network, LLC
Defendant-Appellee.

---

Benjamin Prigge,
Plaintiff-Appellant,

vs.

Landlord Resource Network, LLC
Defendant-Appellee.

---

Kimberly Heins,
Plaintiff-Appellant,

vs.

Landlord Resource Network, LLC
Defendant-Appellee.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA,
Nos.  24-cv-2602, 24-cv-3328, 24-cv-4105 (KMM/EMB)

---

## OPENING BRIEF OF APPELLANTS

Darren Brayer Schwiebert
DEBT LAWSUIT RELIEF, INC.
30 South 9th Street
7th Floor
Minneapolis, MN 55402
(612) 501-6008

John M. Buhta
SOUTHERN MINNESOTA REGIONAL
LEGAL SERVICES, INC.
903 West Center Street, Suite 230
Rochester, MN 55902
(507) 292-0080

April 1, 2026

**SUMMARY OF THE CASE / REQUEST FOR ORAL ARGUMENT**

Appellants Joyce Johnson, Benjamin Prigge, and Kimberly Heins individually sued Appellee Landlord Resource Network in separate lawsuits alleging multiple violations of several different provisions of the FDCPA. The violations included attempts to collect amounts not due under the law or by contract in violation of 15 U.S.C. § 1692f(1). The Appellee is a debt collector law firm that attempted to collect amounts not owed from each of the Appellants in eviction actions filed in state district court.

Appellants separately moved for partial summary judgment on their 15 U.S.C. § 1692f(1) claim and Appellee's bona fide error defense. The motions were heard in a single combined hearing. In a single Order, the district court granted summary judgment against Appellants by creating a new FDCPA requirement that Plaintiffs-Appellants must establish evidence of a lack of good faith by the attorney debt collectors.

The district court erred by creating a judicial limitation on the FDCPA that contradicts rulings by the Supreme Court, this Court, and the FDCPA statute itself. Respectfully, Appellants believe that their cases involve distinct characteristics and important legal questions warranting oral argument, request oral argument in this case, and suggest that 15 minutes for each side would be adequate.

i

# TABLE OF CONTENTS

SUMMARY OF THE CASE / REQUEST FOR ORAL ARGUMENT ..............i

TABLE OF AUTHORITIES ................................................................. iv

JURISDICTIONAL STATEMENT ........................................................ 1

STATEMENT OF ISSUES ................................................................... 2

STATEMENT OF THE CASE ............................................................... 3

  A.  THE FDCPA .............................................................................. 3

  B.  THE FDCPA COMPLAINTS AND EVIDENCE OF LIABILITY ........... 5

    **1.  Appellant Joyce Johnson** ................................................ **5**

    **2.  Appellant Benjamin Prigge** ........................................... **7**

    **3.  Appellant Kimberly Heins** .............................................. **9**

  C.  THE MOTIONS FOR PARTIAL SUMMARY JUDGMENT ................11

  D.  THE DISTRICT COURT'S RULING ................................................ 12

SUMMARY OF THE ARGUMENT ........................................................ 14

ARGUMENT ...................................................................................... 16

  A.   STANDARD OF REVIEW AND LEGAL STANDARD. .................... 16

  B.  THE DISTRICT COURT ERRED BY IMPOSING A REQUIREMENT ON FDCPA PLAINTIFFS THAT CONFLICTS WITH THE STATUTE'S STRICT LIABILITY FRAMEWORK. ...................................................... 16

  C.  THE DISTRICT COURT ERRED BY CREATING A REQUIREMENT THAT CONFLICTS WITH THE PLAIN LANGUAGE OF THE FDCPA AS ENACTED BY CONGRESS. .................................................................... 18

    **1.  Supreme Court Instructions Regarding Application of the FDCPA.** .......................................................................... **18**

    **2.  Nothing in the FDCPA's Plain Language Imposes a "Lack of Good Faith" Requirement For Actions Against Attorney Debt Collectors.** ............................................... **19**

D. THE DISTRICT COURT ERRED BY CREATING AN EXTRA STATUTORY REQUIREMENT INCONSISTENT WITH THE FDCPA'S LEGISLATIVE HISTORY AND AMENDMENTS.................................... 21

    **1. Legislative History of the FDCPA Is Contrary to the District Court's Limitation on FDCPA Liability. ............ 21**

    **2. Congressional Amendments to the FDCPA Foreclose the District Court's Limitation on FDCPA Liability. ............ 22**

E. THE DISTRICT COURT ERRED BY CREATING A REQUIREMENT FOR FDCPA PLAINTIFFS THAT CANNOT BE RECONCILED WITH THE SUPREME COURT'S HOLDING IN *HEINTZ v. JENKINS*. ........... 25

F. THE DISTRICT COURT ERRED BY CREATING A REQUIREMENT THAT SHIFTS THE BURDEN OF PROOF TO PLAINTIFFS AND RELIEVES DEFENDANTS OF THEIR BURDEN TO ESTABLISH THE STATUTORY BONA FIDE ERROR DEFENSE. ....................................... 28

G. THE DISTRICT COURT'S NEW LIMITATION ON THE FDCPA IS NOT REQUIRED OR JUSTIFIED BY HEMMINGSEN, HANEY, OR SMITH. ...................................................................................... 30

    **1. *Hemmingsen v. Messerli & Kramer, P.A.*, 674 F.3d 814 (8th Cir. 2012) ............................................................... 31**

    **2. *Haney v. Portfolio Recovery Associates, LLC*, 895 F.3d 974 (8th Cir. 2016). ...................................................... 32**

    **3. *Smith v. Stewart, Zlimen & Jungers, Ltd.*, 990 F.3d 640 (8th Cir. 2021). ......................................................... 34**

H. THE DISTRICT COURT'S "ALTERNATIVE REMEDIES" RATIONALE DOES NOT JUSTIFY DEPARTING FROM THE FDCPA'S TEXT OR FROM BINDING SUPREME COURT AND CIRCUIT AUTHORITY. ....................................................................................... 35

CONCLUSION ................................................................................. 37

# TABLE OF AUTHORITIES

## CASES

*Allen v. LaSalle Bank*, 629 F.3d 364 (3rd Cir. 2011)............................14, 16

*Avenoso v. Reliance Standard Life Ins. Co.*, 19 F.4th 1020
   (8th Cir. 2021)..............................................................................15

*Donohue v. Quick Collect, Inc.*, 592 F.3d 1027 (9th Cir. 2010)...................16

*Duffy v. Landberg*, 133 F.3d 1120 (8th Cir. 1998) .........................................3

*Duffy v. Landberg*, 215 F.3d 871 (8th Cir. 2000) ........................................26

*Ellis v. Solomon and Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010).......16

*Haney v. Portfolio Recovery Associates*, LLC, 895 F.3d 974
   (8th Cir. 2016)........................................................... 12, 17, 30, 32

*Heintz v. Jenkins*, 514 U.S. 291 (1995)................................................ passim

*Hemmingsen v. Messerli & Kramer, P.A.*, 674 F.3d 814
   (8th Cir. 2012) ............................................................................ passim

*Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718 (2017) .... 2, 14, 17

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*,
   559 U.S. 573 (2010) ................................................................. 2, 15, 21

*LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185 (11th Cir. 2010) ............ 16

*Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029 (2019) ........2, 14, 18

*Peters v. Gen. Serv. Bureau, Inc.*, 277 F.3d 1051 (8th Cir. 2002) ..................3

*Pfizer, Inc. v. International Rectifier Corp.*, 538 F.2d 180
   (8th Cir. 1976) ............................................................................... 16

*Picht v. Jon R. Hawks, Ltd.*, 236 F.3d 446 (8th Cir. 2001)................. 2, 14, 16

*Riedl v. Gen. Am. Life Ins.*, 248 F.3d 753 (8th Cir. 2001)........................... 16

*Rotkiske v. Klemm*, 140 S. Ct. 355 (2019) ......................................... passim

*Ruth v. Triumph P'ships*, 577 F.3d 790 (7th Cir. 2009)............................. 16

*Smith v. Stewart, Zlimen & Jungers, Ltd.,* 990 F.3d 640
   (8th Cir. 2021).......................................................... 12, 17, 30, 33

*Square Liner 360 Degrees, Inc. v. Finis Lavell Chisum & Chief Indus.*,
   691 F.2d 362 (8th Cir. 1982) .................................................... 2, 16

*Wilhelm v. Credico, Inc.*, 519 F.3d 416 (8th Cir. 2007)............................2, 15

## STATUTES

15 U.S.C. § 1 ........................................................................................... 3

15 U.S.C. § 1692 .................................................................................... 1

15 U.S.C. § 1692c(c) ........................................................................... 26

15 U.S.C. § 1692c(c)(2) ...................................................................... 26

15 U.S.C. § 1692c(c)(3) ...................................................................... 26

15 U.S.C. § 1692d ................................................................................. 3

15 U.S.C. § 1692e ................................................................................. 3

15 U.S.C. § 1692e(2)(A) ..................................................................... 26

15 U.S.C. § 1692f .................................................................................. 3

15 U.S.C. § 1692f(1)................................................................. 11, 26, 34

15 U.S.C. § 1692k ..................................................................... 4, 19, 20

15 U.S.C. § 1692k(a) ..................................................................... 4, 18

15 U.S.C. § 1692k(b) ......................................................................... 20

15 U.S.C. § 1692k(b)(1) ..................................................................... 20

15 U.S.C. § 1692k(c) ........................................................... 4, 19, 27, 28

15 U.S.C. § 1692k(d). ......................................................................... 1

15 U.S.C. § 1692k(e) .............................................................. 5, 20, 29

28 U.S.C. § 1331 ................................................................................... 1

28 U.S.C. § 1291.................................................................................... 1

# JURISDICTIONAL STATEMENT

The U.S. District Court for the District of Minnesota had subject matter jurisdiction over the underlying matters in this case as Appellants raised federal questions under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* The FDCPA confers subject matter jurisdiction upon federal district courts pursuant to 15 U.S.C. § 1692k(d). Additionally, 28 U.S.C. § 1331 conferred jurisdiction upon the U.S. District Court for the District of Minnesota as the action arose under the laws of the United States.

The Eighth Circuit Court of Appeals has jurisdiction over this matter pursuant to 28 U.S.C. § 1291 because the underlying Order and Judgment were entered by the U.S. District Court for the District of Minnesota on December 19, 2025. No post-judgment motions were filed. Appellants filed their timely notice of appeal on January 5, 2026.

This is an appeal from a final order which disposes of all parties' claims.

# STATEMENT OF ISSUES

1.  Whether the district court erred in creating a new "lack of good faith" requirement for violation of the FDCPA that contradicts this Court's decision adopting a strict liability standard for the FDCPA.

*Picht v. Jon R. Hawks, Ltd.*, 236 F.3d 446 (8th Cir. 2001)
*Square Liner 360 Degrees, Inc. v. Finis Lavell Chisum & Chief Indus.*, 691 F.2d 362 (8th Cir. 1982)

2.  Whether the district court erred in creating a judicial doctrine limiting the FDCPA that is not contained within the statutory language of the FDCPA in violation of the United States Supreme Court instruction on application of the FDCPA.

*Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718 (2017)
*Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029 (2019)
*Rotkiske v. Klemm*, 140 S. Ct. 355 (2019)

3.  Whether the district court erred in creating a "lack of good faith" requirement into the FDCPA that is inconsistent with the legislative history and amendments to the FDCPA.

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.,* 559 U.S. 573 (2010)
*Heintz v. Jenkins*, 514 U.S. 291 (1995)

4. Whether the district court erred in creating a "lack of good faith" requirement that is inconsistent with the Supreme Court's decision in *Heintz v. Jenkins* applying the FDCPA to debt collector attorneys.

*Heintz v. Jenkins*, 514 U.S. 291 (1995)

5. Whether the district court erred in converting the bona fide error defense that exists in the FDCPA statute into a single "lack of good faith" test for attorney debt collectors to escape liability.

*Wilhelm v. Credico, Inc.*, 519 F.3d 416 (8th Cir. 2007)

**STATEMENT OF THE CASE**

## A.    THE FDCPA

The Fair Debt Collection Practices Act (FDCPA) was enacted in 1978 and codified as 15 U.S.C. § 1692 *et seq.* "The FDCPA is designed to protect consumers from abusive debt collection practices and to protect ethical debt collectors from competitive disadvantage." *Peters v. Gen. Serv. Bureau, Inc.,* 277 F.3d 1051, 1054 (8th Cir. 2002); *see also Duffy v. Landberg*, 133 F.3d 1120, 1122 (8th Cir. 1998); 15 US.C. § 1692(a).

"The FDCPA also contains ***general*** prohibitions on 'conduct the natural consequence of which is to harasses, oppress, or abuse any person' (15 U.S.C. § 1692d), the use of 'any false, deceptive, or misleading representation or means' (15 U.S.C. § 1692e), and any 'unfair or unconscionable means to collect or attempt to collect a debt' (15 U.S.C. § 1692f)." *Peters,* 277 F.3d at 1054 (emphasis added).

The FDCPA also contains ***specific*** subsections under each of the general prohibitions that identify specific conduct that "is a violation" of the FDCPA. There are roughly 30 specifically enumerated violation provisions of the FDCPA. Only a few distinct provisions, however, are relevant to this case. 15 U.S.C. § 1692f provides:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

3

15 U.S.C. § 1692f(1) provides:

> Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> > (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

15 U.S.C. § 1692k(a) provides that "any debt collector who fails to comply with any provision of this subchapter with respect to any person **is liable** to such person . . ." (emphasis added).

The FDCPA statute provides two statutory defenses to the strict liability imposed by 15 U.S.C. § 1692k:

> **(c) Intent**
>
> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional **and** resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

§ 1692k(c) (emphasis added). This statutory defense is commonly referred to as the bona fide error defense.

> **(e) Advisory opinions of Bureau**
>
> No provision of this section imposing any liability shall apply to any act done or omitted ***in good faith in conformity with any advisory opinion of the Bureau***, notwithstanding that after such act or omission has occurred, such opinion is amended, rescinded, or determined by judicial or other authority to be invalid for any reason.

§ 1692k(e) (emphasis added).

## B.    THE FDCPA COMPLAINTS AND EVIDENCE OF LIABILITY

### 1.  Appellant Joyce Johnson

Appellant Joyce Johnson ("Johnson") filed her FDCPA complaint on July 1, 2024. (Case No. 24-cv-2602).  App. 13-23; R. Doc. 1. From October 2019 through approximately February 2024, Johnson was a party to a lease for her apartment at 2103 18 1/2 Avenue Northwest in Rochester, Minnesota. App. 15; R. Doc. 1, at 3. As a low-income renter, Johnson received housing assistance from the U.S. Department of Housing and Urban Development ("HUD"). *Id.*  A portion of Johnson's rent was paid directly by HUD, while the remaining portion was personally paid by Johnson. *Id.*

After discovering a $796 overpayment by HUD, Johnson and her landlord entered into a Repayment Agreement, under which her landlord would return the $796 to HUD and Johnson would, in addition to her portion of ongoing rent, repay her landlord the $796 in 15 consecutive monthly payments of $50 followed by a final payment in the amount of $46. App. 15; R. Doc. 1, at 3. Johnson's landlord began assessing the $50 monthly charge against her on January 1, 2022. *Id.* Johnson's landlord assessed 15 such monthly charges, followed by a $46 charge on May 1,

2023, representing satisfaction in full for the $796 amount that was the subject of the Repayment Agreement. *Id.* However, in addition to charging Johnson $50 per month for the Repayment Agreement, Johnson's landlord erroneously charged her an additional lump sum of $796 on or about December 31, 2022. App. 84; R. Doc. 53, at 2.

Appellee sued Johnson in Olmsted County District Court on July 10, 2023 seeking to evict Johnson from her home and to collect from her $1,827. App. 16; R. Doc. 1, at 4. Appellee falsely stated that Johnson owed rent for May 2023, June 2023, and July 2023, in addition to $587 for a "Repayment Agreement of Subsidy" for May through October 2021. App. 85; R. Doc. 53, at 3.[1] Johnson had already completely satisfied her repayment agreement and did not owe her landlord any additional money. App. 86; R. Doc. 53, at 4.

During its 30(b)(6) deposition, Appellee **admitted** that the landlord had confirmed that the $1,827 amount in the state district court complaint was incorrect at the time that it was filed because the $587 for the

---

[1] Johnson did indeed owe rent for May – July 2023 because her landlord had refused to accept her rent payments. Johnson's landlord then refused to accept Johnson's May 2023 rent payment, claiming in a May 22, 2023 letter that rent payment would not be accepted until the alleged balance was paid in full. App. 84-85; R. Doc. 53, at 2-3. Johnson's landlord also refused to accept her rent payments for June and July 2023, again because of the erroneous balance due on her ledger. App. 85; R. Doc. 53, at 3.

Repayment Agreement included in the state district court complaint had already been paid by Johnson. App. 135-136; R. Doc. 81-2, at 5-6.

**2. Appellant Benjamin Prigge**

Appellant Benjamin Prigge ("Prigge")'s FDCPA complaint filed in Minnesota state court is dated July 18, 2024. (Case No. 24-cv-3328) App. 355-377; R. Doc. 1-1, at 7-29. Appellee removed the case to Federal Court on August 20, 2024. App. 345-348; R. Doc. 1, at 1-4. From February 2020 until June 2023, Prigge was a residential tenant in an apartment building located at 1217 South Eastgate Drive in Rochester, Minnesota, pursuant to a lease with BDKN LLLP. App. 359; R. Doc. 1-1, at 11. During his tenancy, Prigge was a participant in the Housing Choice (Section 8) Voucher program; a portion of his rent was paid by the Olmsted County Housing and Redevelopment Authority, while he personally paid the remaining portion of the rent. App. 393; R. Doc. 49, at 1.

In May 2023, Prigge personally paid his portion of the rent. Prigge App. 394; R. Doc. 49, at 2. Prigge subsequently attempted to pay his personal portion of the June rent, but there was an issue with the landlord's online payment system. *Id.* As a result, Prigge received a letter from his landlord in June 2023, informing Prigge that had seven days to pay his

June rent or leave his apartment. *Id.* Prigge vacated his apartment in June 2023. *Id.*

On or about July 21, 2023, Appellee sued Prigge in Olmsted County District Court on behalf of his landlord, seeking to evict him from his apartment and to collect from him $2,953.92. App. 359; R. Doc. 1-1, at 11. Appellee falsely alleged that Prigge owed his landlord $2,463.92 for rent for May 2023, June 2023, and July 2023, plus a $30 "NSF fee." App. 394, R. Doc. 49, at 2.

The amount demanded in Appellee's state court complaint was a false and deceptive amount. Prigge had already paid rent for May 2023. App. 359; R. Doc. 1-1, at 11. Prigge had moved out of the apartment in June after receiving a letter from his landlord telling him to do so, and yet Appellee was seeking to collect rent payments for June and July. *Id.* Finally, even if Prigge was personally responsible for June and July rent, the amount demanded by Appellee did not equal the correct amount of rent that would be due for those months. *Id.*

After acknowledging that Prigge had already vacated the apartment at issue, Appellee requested dismissal of the state court eviction action. App. 731; R. Doc. 83-4, at 2.

During its 30(b)(6) deposition, Appellee admitted that it did not have documentation or admissible evidence to support its claim that Mr. Prigge's rent had been increased to $1,045, despite attempting to collect that amount from him in the eviction proceeding. App. 142; R. Doc. 81-3, at 4.

### 3. Appellant Kimberly Heins

Appellant Kimberly Heins ("Heins")'s FDCPA complaint filed in Minnesota state court is dated October 15, 2024. (Case No. 24-cv-4105). App. 874-884; R. Doc. 1-1, at 1-11. Appellee removed the case to Federal Court on November 4, 2024. App. 870-873; R. Doc. 1, at 1-4. From March 2023 until April 2024, Heins and her teenage daughter were tenants in the French Creek Townhomes located at 2113 Chardonnay Lane NW in Rochester, Minnesota. App. 898; R. Doc. 42, at 1. During her tenancy, Heins' monthly rent was $1,550. *Id.* Heins also paid her landlord various amounts for an "Application Fee," "Convenience Fee," Move in Admin Fee," "Credit Approval Fee," Renters Insurance Waiver Fee," "Utility Billing Service Fee," "Utility Billing – Setup Fee," and "Utility Billing – Trash." App. 898-899; R. Doc. 42, at 1-2.

In October 2023, Appellee brought an eviction action on behalf of the landlord against Heins in Olmsted County District Court. App. 899, R. Doc. 42, at 7. In the eviction complaint, LRN sought to collect from Heins

$4,130.32, which LRN claimed was "Rent for August 2023 through October 2023." *Id.*

However, the Order Enforcing Settlement in a different state court case prohibited Heins' landlord from collecting (including seeking to evict any tenant based on non-payment of) certain charges other than limited categories of charges enumerated in that order. App. 958-968; R. Doc. 42-2, at 1-11. (the "Order Enforcing Settlement"). The Order Enforcing Settlement prohibited Heins' landlord from seeking to collect certain amounts from any tenants of its rental properties in Minnesota, including Heins. *Id.*; App. 876; R. Doc. 1-1, at 3.

The amount Appellee sought to collect from Heins in the eviction lawsuit included amounts that Heins' landlord was not permitted to collect (including evicting her for not paying) under the Order Enforcing Settlement. App. 901; R. Doc. 42, at 4. Specifically, the calculations provided by Appellee improperly included an "Application Fee" in the amount of $50, a "Move in Admin Fee" in the amount of $100, and a "credit approval fee" in the amount of $300 (for a total of $450 in prohibited charges) in the alleged balance owed to Heins' landlord claimed in the eviction complaint. *Id.*

During its 30(b)(6) deposition, Appellee admitted that the ledger it relied on in determining the amount that it sought to collect from Heins included the $50 application fee, the $100 move-in admin fee, and the $300 credit approval fee. App. 145; R. Doc. 81-4, at 1. Appellee could not attempt to collect these amounts based upon the state court Order Enforcing Settlement against the landlord. App. 876; R. Doc. 1-1, at 3.

**C.     THE MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

On January 24, 2025, each of the Appellants moved for Partial Summary Judgment of liability based upon Appellee's violation of §1692f(1) for attempting to collect an amount not due at law or by contract by incorrectly stating about the amount due in the eviction actions filed in state district court against each individual Appellant. App. 81-82; R. Doc. 50; App. 391-392; R. Doc. 46; App. 896-897; R. Doc. 39. Appellee simultaneously moved for Judgment on the Pleadings based upon its argument that the attorneys were not debt collectors subject to the FDCPA. App. 32-33; R. Doc. 25. At the combined hearing on March 17, 2025, the district court denied Appellee's motion and held that the Appellee was a debt collector subject to the FDCPA and denied Appellants' motions for Partial Summary Judgment without prejudice as premature. App. 7; R. Doc. 65. The Order was issued on April 7, 2025. App. 116-125; R. Doc. 66.

On July 30, 2025, Appellants each filed Renewed Motions for Partial Summary Judgment. The renewed motions were again based upon Appellee's violation of § 1692f(1) and seeking summary judgment on Appellee's defense of bona fide error. App. 126-127; R. Doc. 78; App. 419-420; R. Doc. 72; App. 976-977; R. Doc. 66. The Renewed Motions included substantial additional evidence from depositions establishing that the amounts that Appellee attempted to collect in the state court actions against each Appellant were incorrect and that Appellee could not satisfy the requirements of the bona fide error defense. App. 128-147; R. Doc. 81.

On August 1, 2025, Appellee filed cross motions for Summary Judgment on the same issues. App. 152-153; R. Doc. 87; App. 445-446; R. Doc. 78; App. 1002-1003; R. Doc. 72.

## D.   THE DISTRICT COURT'S RULING

In its December 19, 2025 ruling, the district court denied Appellants' Motions for Partial Summary Judgment, granted summary judgment in favor of Appellee and dismissed all three cases with prejudice. Add. 40-41.

In the Order, the district court extends its interpretation of this Court's rulings in *Hemmingsen, Haney,* and *Smith* to create a broad new exception to FDCPA liability for attorney debt collectors unless the Plaintiff

can establish evidence "that calls into question whether an attorney's assertion in litigation was made in good faith." Add. 30-31.

In reaching this conclusion, the district court makes two admissions. First, the district court recognizes the misstatement in the amount owed in the eviction complaint filed in state court by Appellee would otherwise be a violation of the FDCPA. Add. 28 ("Stating in a legal pleading that a debtor owes $3,000 when she really owes something less is an assertion of fact and doesn't accurately convey the amount owed.").

Second, the district court recognized the distinctions between these cases and *Hemmingsen, Haney,* and *Smith*, but found that the distinctions were "not so significant that their **reasoning** cannot be applied here." Add. 30. The district court then extended its interpretation of the reasoning of the prior decision to substantially expand this Court's limited exception to require an FDCPA Plaintiff to prove that the debt collector attorney was not acting in "good faith." Add. 30-31.

In the end, the district court granted summary judgment based upon its finding that "in alleging the amount owed in each case, [Appellee] did nothing more than advance its clients' legal positions in good faith." Add. 31. According to the district court, the fact that the amount is incorrect in all three cases is irrelevant because the Appellants were unable to overcome

13

its newly created "lack of good faith" requirement despite this Court's strict liability standard for the FDCPA. Add. 31-40.

Judgment was entered and the district court case dismissed with prejudice. App. 344; R. Doc. 106; App. 869; R. Doc. 103; App. 1586; R. Doc. 96. This appeal followed.

## SUMMARY OF THE ARGUMENT

Appellants were each subject to improper attempts by Appellee to collect amounts not due by contract or under law in violation of § 1692f(1). In a single Order, the district court granted summary judgment against Appellants by improperly creating a new FDCPA requirement that Appellants must establish evidence of a lack of good faith by the attorney debt collectors. The new requirement is inconsistent with the FDCPA statute itself, decisions from the Supreme Court and this Court's previous decisions.

1. This new "lack of good faith" requirement contradicts the strict liability standard for the FDCPA adopted by this Court in *Picht v. Jon R. Hawks, Ltd.*, 236 F.3d 446 (8th Cir. 2001) and "generally accepted" by every circuit court that has addressed the issue. *Allen v. LaSalle Bank*, 629 F.3d 364, 368 n.7 (3rd Cir. 2011) (collecting cases)

2. This new "lack of good faith" requirement contradicts the Supreme Court's instructions regarding application of the FDCPA as limited to the language contained in the statute as enacted by Congress. *See Henson v. Santander Consumer USA Inc.,* 137 S. Ct. 1718 (2017)*; Obduskey v. McCarthy & Holthus LLP,* 139 S. Ct. 1029 (2019); *Rotkiske v. Klemm,* 140 S. Ct. 355 (2019). This new "lack of good faith" requirement is not found in the statutory language of the FDCPA itself.

3. This new "lack of good faith" requirement is inconsistent with the legislative history and amendments to the FDCPA. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.,* 559 U.S. 573 (2010); *Heintz v. Jenkins,* 514 U.S. 291 (1995).

4. This new "lack of good faith" requirement contradicts the Supreme Court's decision in *Heintz v. Jenkins* applying the FDCPA to debt collection attorneys.

5. This new "lack of good faith" requirement improperly shifts the burden of proof to the Plaintiff under the bona fide error defense and excuses Appellee from requirements of the statutory defense. *See. Wilhelm v. Credico, Inc.,* 519 F.3d 416 (8th Cir. 2007)

# ARGUMENT

## A. STANDARD OF REVIEW AND LEGAL STANDARD.

This Court reviews the district court's grant of summary judgment de novo. *See Avenoso v. Reliance Standard Life Ins. Co.*, 19 F.4th 1020, 1024 (8th Cir. 2021). Summary judgment is proper only if "there is no genuine issue of material fact" and "the moving party is entitled to judgment as a matter of law." *Id.* (citing *Riedl v. Gen. Am. Life Ins.*, 248 F.3d 753, 756 (8th Cir. 2001)). "Although the district court must determine whether there is a genuine issue as to any material fact, this is a legal determination." *Id.* (citations omitted).

## B. THE DISTRICT COURT ERRED BY IMPOSING A REQUIREMENT ON FDCPA PLAINTIFFS THAT CONFLICTS WITH THE STATUTE'S STRICT LIABILITY FRAMEWORK.

The FDCPA is a strict liability statute and is liberally construed to protect consumers. *Picht v. Jon R. Hawks, Ltd.*, 236 F.3d 446, 451 (8th Cir. 2001). "The characterization of the FDCPA as a strict liability statute is generally accepted." *Allen v. LaSalle Bank*, 629 F.3d 364, 368 n.7 (3rd Cir. 2011) (citing *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010); *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010); *Ellis v. Solomon and Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010); *Ruth v. Triumph P'ships*, 577 F.3d 790, 805 (7th Cir. 2009)).

A "lack of good faith" or "bad faith" requirement is inconsistent with strict liability. *See e.g.*, *Square Liner 360 Degrees, Inc. v. Finis Lavell Chisum & Chief Indus.*, 691 F.2d 362, 374 (8th Cir. 1982) (explaining that a requirement to prove "that the omission was wrongful, willful, or in bad faith" is inconsistent with strict liability) (quoting *Pfizer, Inc. v. International Rectifier Corp.*, 538 F.2d 180, 186-87 (8th Cir. 1976)).

The district court attempts to overcome this obvious inconsistency with this Court's strict liability precedential case law by arguing that the "lack of good faith" creates a new exception to strict liability. Add 25 ("The relevant portions of *Hemmingsen, Haney*, and *Smith* take the strict liability otherwise imposed by the FDCPA's conduct-regulating provisions and carve out exceptions for debt collection attorneys who engage in certain litigation conduct in good faith."). This argument is tautological. The district court has improperly extended the "reasoning" of *Hemmingsen, Haney*, and *Smith* to create an exception that swallows the rule of strict liability.

As applied by the district court in these cases, the burden on the Appellants to prove a "lack of good faith" by Appellee is inconsistent with this Court's prior decision that the FDCPA is a strict liability statute.

## C. THE DISTRICT COURT ERRED BY CREATING A REQUIREMENT THAT CONFLICTS WITH THE PLAIN LANGUAGE OF THE FDCPA AS ENACTED BY CONGRESS.

### 1. Supreme Court Instructions Regarding Application of the FDCPA.

Three recent United States Supreme Court decisions regarding application of the FDCPA have emphasized that the statute must be enforced as written by Congress and not rewritten by the Courts. *See Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1725 (2017) ("And while it is of course our job to apply faithfully the law Congress has written, it is never our job to rewrite a constitutionally valid statutory text under the banner of speculation about what Congress might have done had it faced a question that, on everyone's account, it never faced."); *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1040 (2019) ("Congress may think these state protections adequate, or it may choose to expand the reach of the FDCPA. Regardless, for the reasons we have given, we believe that the statute exempts entities engaged in no more than the "enforcement of security interests" from the lion's share of its prohibitions. ***And we must enforce the statute that Congress enacted***.") (emphasis added); *Rotkiske v. Klemm*, 140 S. Ct. 355, 361 (2019) ("It is not our role to second guess Congress' decision to include a "violation occurs" provision, rather than a discovery provision, in § 1692k(d). . . It is Congress, not this

18

Court, that balances those interests. We simply enforce the value judgments made by Congress.").

These are not generic cases about statutory construction. These three cases are specific to the application of the FDCPA by Courts. In each case, the Supreme Court made clear that it is the language of the FDCPA as written by Congress that controls the application of the FDCPA.

2. **Nothing in the FDCPA's Plain Language Imposes a "Lack of Good Faith" Requirement For Actions Against Attorney Debt Collectors.**

15 U.S.C. § 1692k(a) provides that "any debt collector who fails to comply with any provision of this subchapter with respect to any person *is liable* to such person . . ." (emphasis added). Hard stop. Strict liability.

The FDCPA statute, however, provides two statutory defenses to the strict liability imposed by 15 U.S.C. § 1692k:

> **(c)Intent**
>
> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional *and* resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

§ 1692k(c) (emphasis added). This statutory defense is commonly referred to as the bona fide error defense. The statute makes clear that it is not simply "not intentional" violations that avoid liability under § 1692k. They

must ***also*** have "resulted from a bona fide error notwithstanding the maintenance of procedures reasonable adapted to avoid any such error."

The statute also makes clear that the burden of establishing the defense under § 1692k(c) is on the Appellee and not the Appellant. (". . . if the debt collector shows by a preponderance of evidence . . .")

**(e)Advisory opinions of Bureau**

> No provision of this section imposing any liability shall apply to any act done or omitted ***in good faith in conformity with any advisory opinion of the Bureau***, notwithstanding that after such act or omission has occurred, such opinion is amended, rescinded, or determined by judicial or other authority to be invalid for any reason.

§ 1692k(e) (emphasis added). While § 1692k(e) does have a "good faith" exception to liability, it is ***limited to*** acts done or omitted "in conformity with any advisory opinion of the Bureau."

Finally, § 1692k(b)(1) contains an "intentional" element as part of the factors used to determine the ***amount of statutory damages***, not as a basis to limit the liability of debt collector. § 1692k(a)(2)(A) provides "in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000." § 1692k(b) entitled "Factors Considered by Court" provides that:

> In determining the ***amount of liability*** in any action under subsection (a), the court shall consider, among other relevant factors—

> (1) in any individual action under subsection (a)(2)(A), the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional.

(emphasis added).

The language of § 1692k as enacted by Congress ***does not*** contain a "lack of good faith" requirement without additional specific elements in 1692k(c) and 1692k(e). Thus, Congress already made the value judgment not to enact a broad "lack of good faith" requirement. The Court must enforce that decision by Congress. *Rotkiske v. Klemm*, 140 S. Ct. 355, 361 (2019). The district court's adoption of a "lack of good faith" requirement without the additional elements is improper as inconsistent with the FDCPA as enacted by Congress.

## D. THE DISTRICT COURT ERRED BY CREATING AN EXTRA STATUTORY REQUIREMENT INCONSISTENT WITH THE FDCPA'S LEGISLATIVE HISTORY AND AMENDMENTS.

### 1. Legislative History of the FDCPA Is Contrary to the District Court's Limitation on FDCPA Liability.

The legislative history of the FDCPA reveals that the statute as enacted by Congress was intended to impose strict liability and ***not*** require a "lack of good faith" as a prerequisite to recovery. As explained by the Supreme Court in footnote 14 of *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*, 559 U.S. 573 (2010):

21

For instance, an amendment was proposed and rejected during the Senate Banking Committee's consideration of the FDCPA that would have required proof that a debt collector's violation was "knowin[g]." Senator Riegle, one of the Act's primary sponsors, opposed the change, explaining that the bill reflected the view that "certain things ought not to happen, period. . . ***[W]hether somebody does it knowingly, willfully, you know, with a good heart, bad heart, is really quite incidental***." *See* Senate Committee on Banking, Housing and Urban Affairs, Markup Session: S. 1130--Debt Collection Legislation 60 (July 26, 1977) (hereinafter Markup); see also *ibid.* ("We have left a way for these disputes to be adj[u]dicated if they are brought, where somebody can say, I didn't know that, or my computer malfunctioned, something happened, I didn't intend for the effect to be as it was"). To similar effect, a House Report on an earlier version of the bill explained the need for new legislation governing use of the mails for debt collection on grounds that existing statutes "frequently require[d]" a showing of "specific intent[,] which is difficult to prove." H. R. Rep. No. 95-131, p. 3 (1977).

*Id.* at 596, n. 14 (emphasis added) (ellipses and brackets in original). The

*Jerman* Court held that "Congress also did not confine liability under the

FDCPA to 'willful' violations, a term more often understood in the civil

context to excuse mistakes of law." *Id.* at 523.

2. **Congressional Amendments to the FDCPA Foreclose the District Court's Limitation on FDCPA Liability.**

As explained by the Supreme Court in *Heintz v. Jenkins*, 514 U.S. 291,

294-295 (1995):

Second, in 1977, Congress enacted an earlier version of this statute, which contained an express exemption for lawyers. That exemption said that the term "debt collector" did not include "any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client." Pub. L. 95-109, § 803(6)(F), 91 Stat. 874, 875. In 1986,

however, Congress repealed this exemption in its entirety, Pub. L. 99-361, 100 Stat. 768, without creating a narrower, litigation-related, exemption to fill the void.

Congress' action was spurred by, among other things, collection attorney advertising their FDCPA exception to their commercial advantage over regulated debt collectors. *See* Oversight Hearing on FDCPA and H.R. 4617 Before the Subcomm. on Consumer Affairs and Coinage of the House Comm. on Banking, Finance and Urban Affairs, 98th Cong., 2d Sess. (Jan. 31, 1984); Hearings on H.R. 237, Before the Subcomm. on Consumer Affairs and Coinage of the House Comm. on Banking, Finance and Urban Affairs, 99th Cong., 1st Sess. (Oct. 22, 1985); H.R. Rep. No. 405, 99th Cong., 1st Sess. (Nov. 26, 1985) reprinted in 1986 U.S.C.C.A.N. 1752, 132 Cong. Rec. H10534 (daily ed. Dec. 2, 1985) (statement of Rep. Annunzio). Attorneys capitalized on this exemption by advertising their availability and exemption from the Act. *See* H.R. Rep. No. 405, 99th Cong., 1st Sess. 5 (1985) reprinted in 1986 U.S.C.C.A.N. 1752, 1756.

"As a result, creditors seeking to circumvent the requirements of the Act turned to attorneys." Tang Thanh Trai Le, "Are Litigating Attorneys Debt Collectors Under the Federal Fair Debt Collection Practices Act?," American Bar Association, Preview of United States Supreme Court Cases, Issue No. 5 at p. 219.

Similarly, the *Heintz* Court explained that alternative language designed to limit liability by attorneys was ***proposed*** as part of the 1986 amendment ***but not enacted***. *Heintz*, 541 U.S. at 297-298 ("For another thing, when Congress considered the Act, other Congressmen expressed fear that repeal would limit lawyers' 'ability to contact third parties in order to facilitate settlements' and 'could very easily interfere with a client's right to pursue judicial remedies.' H. R. Rep. No. 99-405, p. 11 (1985) (dissenting views of Rep. Hiler). They proposed alternative language designed to keep litigation activities outside the Act's scope, but that language was not enacted.").

Congress deleted the original exemption in the FDCPA excluding "any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client." This change was motivated by attorneys who were advertising that they could engage in behavior that non-attorney debt collectors could not in order to attract clients seeking to circumvent the requirements of the FDCPA. The district court's new "lack of good faith" exception for attorneys will create the same incentive for advertising the circumvention of the FDCPA that Congress intentionally sought to eliminate through the 1986 amendment.

Similarly, had Congress intended for liability under the statute it enacted to be limited to "lack of good faith," it could have made that change in 1986 when the exception for attorneys was removed from the FDCPA. Congress did not.

Congress made the value judgment that the strict liability FDCPA should apply to attorneys, just as it applies to every other debt collector, by removing the exception in 1986. The Court must enforce that decision by Congress. *Rotkiske v. Klemm*, 140 S. Ct. 355, 361 (2019).

**E. THE DISTRICT COURT ERRED BY CREATING A REQUIREMENT FOR FDCPA PLAINTIFFS THAT CANNOT BE RECONCILED WITH THE SUPREME COURT'S HOLDING IN *HEINTZ v. JENKINS*.**

The Supreme Court decision in *Heintz v. Jenkins* involved a case almost factually identical to the cases in this appeal. As explained by the Court:

> The plaintiff in this case, Darlene Jenkins, borrowed money from the Gainer Bank in order to buy a car. She defaulted on her loan. The bank's law firm then sued Jenkins in state court to recover the balance due. As part of an effort to settle the suit, a lawyer with that law firm, George Heintz, wrote to Jenkins' lawyer. His letter, in listing the amount she owed under the loan agreement, included $ 4,173 owed for insurance, bought by the bank because she had not kept the car insured as she had promised to do.
>
> Jenkins then brought this Fair Debt Collection Practices Act suit against Heintz and his firm. She claimed that Heintz's letter violated the Act's prohibitions against trying to collect an amount not "authorized by the agreement creating the debt," § 1692f(1), and

25

against making a "false representation of . . . the . . . amount . . . of any debt," § 1692e(2)(A). The loan agreement, she conceded, required her to keep the car insured "'against loss or damage'" and permitted the bank to buy such insurance to protect the car should she fail to do so. App. to Pet. For Cert. 17. But, she said, the $ 4,173 substitute policy was not the kind of policy the loan agreement had in mind, for it insured the bank not only against "loss or damage" but also against her failure to repay the bank's car loan. Hence, Heintz's "representation" about the "amount" of her "debt" was "false"; amounted to an effort to collect an "amount" not "authorized" by the loan agreement; and thus violated the Act.

*Id.* at 293 – 294. The district court in *Heintz* dismissed the lawsuit for failure to state a claim because the district court held that the FDCPA does not apply to lawyers engaging in litigation. *Id.* at 294. The Seventh Circuit reversed and the Supreme Court affirmed the Seventh Circuit by concluding that the FDCPA "does apply to lawyers engaged in litigation." *Id.*

There is no mention in *Heintz v. Jenkins* that the attorney's conduct in violating § 1692f(1) or § 1692e(2)(A) requires analysis of a "lack of good faith" standard. The "additional, implicit, exception" discussed by the Supreme Court in *Heintz* **was not,** as the district court suggests, an open door to limit the scope of the FDCPA liability on attorneys. Rather, the Supreme Court narrowly held that § 1692c(c) contained exceptions in § 1692c(c)(2) and (3) that allowed the requirements of § 1692c(c) to not be interpreted as stopping all "'communications' inherent in an ordinary

lawsuit and thereby cause an ordinary debt-collecting lawsuit to grind to a halt." *Id* at 296.

This Court's decision in *Duffy v. Landberg*, 215 F.3d 871 (8th Cir. 2000) provides a similar example. The *Duffy* Court also held that collection of overstated interest by attorney Kevin Landberg in the amounts of $1.29, $1.84, and $.65 constituted violations of the plain language of 15 U.S.C. § 1692f(1). There is no discussion by the *Duffy* Court about whether attorney Landberg's letter was "in good faith." Rather, the *Duffy* Court held that "although the interest calculations were admittedly only slightly overstated, the letters seeking these overstated interest charges were nonetheless an attempt to collect interest not permitted by law, and therefore a violation of the plain language of section 1692f(1)." *Id.* at 875.

The district court's creation of a new "lack of good faith" standard that imposes the burden of proof on the consumer effectively reverses the Supreme Court's decision in *Heintz v. Jenkins* (and this Court's decision in *Duffy*). The attorney can rely on false statements from their clients and avoid liability by simply arguing that the consumer cannot ***prove*** that they lacked good faith when they made the false statements about the amount due under the contract or at law.

## F. THE DISTRICT COURT ERRED BY CREATING A REQUIREMENT THAT SHIFTS THE BURDEN OF PROOF TO PLAINTIFFS AND RELIEVES DEFENDANTS OF THEIR BURDEN TO ESTABLISH THE STATUTORY BONA FIDE ERROR DEFENSE.

As previously discussed, there are clearly defined statutory defenses to the strict liability of the FDCPA contained in § 1692k. The effect of the new requirement created by the district court transforms the statutory defenses in a way that is incompatible with the FDCPA as enacted by Congress. The bona fide error defense as Congress enacted it provides:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional ***and*** resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

§ 1692k(c) (emphasis added).

The first inconsistency with the district court's new standard is the burden of proof. The statutory language expressly provides that the ". . . the debt collector shows by a preponderance of evidence that . . ." The district court's new standard puts the burden on the consumer to provide evidence that the attorney "lacked good faith." This is particularly problematic in the context of motions to dismiss brought by debt collection attorneys alleging that the consumer has not and cannot plead sufficient evidence to satisfy this standard. *See e.g., Gray v. Hanbery & Turner, P.A.*, (D. Minn.) case

0:26-cv-00001-LMP-DJF (filing motion to dismiss based upon *Johnson* trilogy decision).

Congress made the value decision that the burden of proof is on the debt collector and not on the consumer. The Court must enforce that decision by Congress. *Rotkiske v. Klemm*, 140 S. Ct. 355, 361 (2019).

Second, the new standard adopted by the district court eliminates all of the statutory requirements after the word "and" in § 1692k(c). The statute requires that the debt collector ***also prove*** that "[the violation] resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." By simplifying the test to "lack of good faith," the district court eliminates the additional requirements adopted by Congress as its value judgment.

The district court did not discuss the bona fide error defense asserted by Appellee that was the subject of Appellants' motions for partial summary judgment. The evidence submitted by Appellants on summary judgment established that Appellee denied that an error occurred ***and*** that nothing in Appellee's procedures would have stopped the mistakes from happening. App. 135-136; R. Doc. 81-2, at 5-6; App. 138; R. Doc. 81-2, at 8; App. 143-144; R. Doc. 81-3, at 5-6; App. 146; R. Doc. 81-5, at 1. Thus, Appellee lacked

the "procedures reasonable adapted to avoid such an error" required by the statute.

The same is true for § 1692k(e) which provides that "No provision of this section imposing any liability shall apply to any act done or omitted in good faith ***in conformity with any advisory opinion of the Bureau*** . . ." The district court's new limitation expands the "lack of good faith" exception beyond the explicit limitation in the statute that the act done or omitted in good faith ***must be*** in conformity with any advisory opinion of the Bureau. If Congress had intended the broader exception created by the district court it could have simply omitted or deleted this additional requirement in the statute. The district court's decision rendering this additional language superfluous is incorrect as a matter of law.

### *G.* **THE DISTRICT COURT'S NEW LIMITATION ON THE FDCPA IS NOT REQUIRED OR JUSTIFIED BY *HEMMINGSEN, HANEY,* OR *SMITH.***

The district court admits that *Hemmingsen*, *Haney*, and *Smith* are distinguishable from these cases on appeal. Add. 28-29. The district court nonetheless attempts to expand the "reasoning" of those cases to create its new "lack of good faith" limitation to the FDCPA. Add. 30. The district court's new limitation is neither justified nor required by this Court's decisions in *Hemmingsen*, *Haney*, and *Smith*.

1. ***Hemmingsen v. Messerli & Kramer, P.A.*, 674 F.3d 814 (8th Cir. 2012).**

The *Hemmingsen* court makes clear that it does not stake out a broad exemption for debt-collection attorney liability under the FDCPA:

> We are unwilling to adopt the district court's broad ruling that false statements not made directly to a consumer [i.e., made to a court] are never actionable under § 1692e. No other court has read the statute that narrowly. Debt collector lawyers make representation to debtors' attorneys or in debt collection pleadings in a wide variety of situations.... We conclude that the diverse situations in which potential FDCPA claims may arise during the course of litigation, and the Supreme Court's caution in *Heintz* that careful crafting may be required in applying the statute's prohibitions to attorneys engaged in litigation, counsel against anything other than a case-by-case approach....

674 F.3d at 818-19.

*Hemmingsen* did not involve a debt collector overstating the amount of the debt, but rather taking a legal position about whether a wife was liable on her husband's credit card where her husband had added her to the account, she never questioned statements indicating that it was a joint account, and she signed a marital termination agreement listing the account as a joint obligation for the couple's living expenses. *Hemmingsen* at 819. The Court concluded, "The fact that a state court judge rejected the contention, unaware that Ms. Hemmingsen had personally made at least one payment on the account, ***does not prove*** that those assertions were false or misleading for purposes of 1692e." *Id.* (emphasis added).

Thus, *Hemmingsen* teaches that the FDCPA does apply to representations made by lawyers in legal pleadings, but "the fact that a lawsuit turns out ultimately to be unsuccessful" does not, "***by itself***" prove a violation of the FDCPA. *Hemmingsen* at 820 (quoting *Heintz*, 514 U.S. at 295-96) (emphasis added).

The district court focuses on the "hypothetical" addressed by the *Hemmingsen* Court. There are two problems with the district court's analysis. First, the *Hemmingsen* Court ***did not*** hold that the hypothetical was the only way that an attorney could be subject to liability under the FDCPA. To the contrary, the *Hemmingsen* Court adopted a case-by-case approach. Second, the facts of these cases fit within the *Hemmingsen* hypothetical when acknowledging that the baseless Prigge eviction complaint was voluntarily dismissed at the state court hearing. Appellee is misstating the amount due in numerous cases and then dismissing the ones where they later discover that the misrepresentations are false; exactly the hypothetical that the *Hemmingsen* Court had in mind.

2. ***Haney v. Portfolio Recovery Associates*, LLC, 895 F.3d 974 (8th Cir. 2016).**

The *Haney* Court recognizes that a debt collection lawyer may violate

the FDCPA when he or she attempts to collect interest not recoverable under state law. *Haney* at 988-989. Specifically, the Eighth Circuit observed that "(1) there exists no de minimis exception to FDCPA liability based upon low dollar amounts; and (2) debt collectors' false representation about the availability of remedies or amounts owed under state law, like representations of fact...may be actionable pursuant to the FDCPA." *Id.* at 989.

The *Haney* Court considered whether a "wherefore" clause at the end of a complaint, in the "Prayer for Relief" section, could give rise to FDCPA liability:

> In its petition filed against Haney in Missouri circuit court, PRA included two prayers for relief asking the court to enter judgment in a sum certain, "together with prejudgment interest, as allowed by law, at the statutory rate from and after July 20, 2010, plus interest on any judgment...at the rate of 9% per annum.

*Haney* at 979; 989-990. The *Haney* Court concluded that a request for interest in the concluding "wherefore" paragraph was merely a "good faith legal position **on a point of unsettled Missouri law**" in a "prayer for relief." *Id.* at 989-990 (emphasis added).

Unlike *Haney*, Appellee's conduct is not an assertion of a legal position based on an unsettled area of law and, more importantly, it did not occur in the "prayer for relief" portion of the pleading.

### 3. *Smith v. Stewart, Zlimen & Jungers, Ltd.*, 990 F.3d 640 (8th Cir. 2021).

The § 1692e claim in *Smith* was based on the one page conciliation court complaint including the phrase "plus disbursements" as part of the relief requested. *Smith* at 645. This Court affirmed dismissal of this claim, noting that the defendant "could have recovered disbursements if it had prevailed in the Conciliation Court," and also that the request for disbursements were "the equivalent to a prayer for relief, in a typical district-court complaint," which the Court defined as "[a] request to addressed to the court and appearing at the end of a pleading; esp., a request for specific relief or damages." *Id.* (citing Black's Law Dictionary (11th ed. 2019)). The Court held, "Although the requests appeared toward the beginning of the Statements of Claim, they were directed to the court and were part of SZJ's reasonable request for specific relief." *Id.* at 645.

Here, the state district court eviction actions against Appellants were not filed in conciliation court using the standard conciliation court form. The misrepresentation about the amount of Appellants' alleged debt was not "the equivalent to a prayer for relief in a typical district court complaint." It was not "directed to the court [as] part of [LRN's] reasonable request for specific relief." Rather, statements regarding the alleged arrearage amount are directed at the consumer, not at the court; as the

court can only grant possession of the premises, but the consumer can settle the case by paying the arrearage. *See* Minn. Stat. § 504B.291, subd. 1 (providing that "the tenant may…redeem the tenancy and be restored to possession by paying to the landlord or bringing to the court the amount of rent that is an arrear").

The alleged § 1692f(1) violation in *Smith* was the debt collection firm's action of bringing lawsuits without possessing sufficient evidence to satisfy Court rules about proving a valid chain of assignment for the debt in question. This is completely different from Appellants' claim that Appellee attempted to collect an amount that was not due under contract or at law. *Smith* at 648 ("In their complaints, Smith and Washington do not allege that SZJ sought to collect debts that were not in fact owed.").

The *Smith* Court did not create a new exception to the FDCPA that applied a "lack of good faith" requirement to all conduct by attorneys in litigation. *Smith* does not justify the district court's decision.

## H. THE DISTRICT COURT'S "ALTERNATIVE REMEDIES" RATIONALE DOES NOT JUSTIFY DEPARTING FROM THE FDCPA'S TEXT OR FROM BINDING SUPREME COURT AND CIRCUIT AUTHORITY.

The district court attempts to justify the creation of a new exception to the FDCPA by suggesting that the consumer is not without remedies for

35

the conduct by the Appellee that violated the FDCPA. Add. 30 ("The Court also observes that applying the rules from those cases to these circumstances does not leave a tenant without any remedy. Indeed, the record suggests that each of these Plaintiffs could have raised any of their concerns with the courts in the underlying eviction proceedings to address the merits of LRN's assertions, and if they believed LRN acted in bad faith, they could have sought corrective action in an appropriate motion.").

There are three problems with this analysis. First, sacrificing the FDCPA rights of consumers just because they may be able to bring sanctions motions in state district court is not what Congress intended in the FDCPA. This same argument could be used to eliminate all violations of the FDCPA – just let the consumers complain about the false statements in the state court collection action. The FDCPA was enacted with a private attorney general provision to encourage the filing of FDCPA lawsuits to police the violations of the FDCPA. No such provision exists in the state court. Consumers would be left without access to advocates to protect their rights. That is not what Congress created when it enacted the FDCPA and not what the Supreme Court concluded in *Heintz v. Jenkins.*

Second, this suggestion is unworkable in practice. It does not work in cases, such as Prigge, where the eviction action was dismissed at the

hearing. It would also put an unworkable burden on the state courts attempting to resolve issues of eviction and the ability of the consumers to continue to live in their apartments by requiring them to now evaluate Rule 11 sanctions motions in every case where the attorney overstates the amount due. Moreover, Rule 11 does not impose strict liability like the FDCPA.

Finally, the Supreme Court has made it clear that the Court should not enforce the FDCPA in a way that is different than how it was enacted by Congress based upon Congress' value judgments. Congress, and not the Court, should consider whether to amend the statute in light of other remedies available to consumers. The fact that the district court envisions other remedies outside the FDCPA does not justify overriding the value judgment of Congress in enacting and amending the FDCPA.

## CONCLUSION

This Court should reverse the grant of summary judgment on Appellants' FDCPA claims and remand for further proceedings.

Respectfully Submitted,

/s/*Darren Brayer Schwiebert*
Darren Brayer Schwiebert
DEBT LAWSUIT RELIEF, INC.
20 South 9th Street, 7th Floor
Minneapolis, MN 55402

37

John M. Buhta
SOUTHERN MINNESOTA REGIONAL
LEGAL SERVICES, INC.
903 West Center Street, Suite 230
Rochester, MN 55902

*Counsel for Appellants*

DEBT LAWSUIT RELIEF, INC. is a
501(c)(3) non-profit organization. The
purpose of this corporation is
providing relief to the poor and
distressed by providing legal services
to persons who were otherwise
financially incapable of obtaining such
services.

SOUTHERN MINNESOTA REGIONAL
LEGAL SERVICES, INC. (SMRLS) is a
501(c)(3) non-profit organization that
provides legal help to low-income
people in critical civil matters.

April 1, 2026

**CERTIFICATE OF COMPLIANCE WITH WORD LIMITS**

Pursuant to Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure, I hereby certify that the textual portion of the foregoing brief (exclusive of the tables of contents and authorities, certificates of service and compliance, but including footnotes) contains 8,697 words in Georgia 14-point font as determined by the word counting feature of Microsoft Word 365.

Pursuant to Circuit Rule 28A(h), I also hereby certify that the electronic files of this Brief and accompanying Addendum have been submitted to the Clerk via the Court's CM/ECF system. The files have been scanned for viruses and are virus-free.

Respectfully Submitted,

/s/*Darren Brayer Schwiebert*
Darren Brayer Schwiebert

*Counsel for Appellants*

# CERTIFICATE OF SERVICE

Pursuant to Rule 25 of the Federal Rules of Appellate Procedure, and Circuit Rule 25A(a), I hereby certify that on the 1st day of April, 2026, I filed a copy of the Opening Brief of Appellants, along with an addendum, with the Clerk of the Court through the Court's CM/ECF system, which will serve electronic copies on all registered counsel.

Respectfully Submitted,

/s/*Darren Brayer Schwiebert*
Darren Brayer Schwiebert

*Counsel for Appellants*